Argued and submitted September 6, 1989, certified questions answered
February 22, 1990

# HUNTER et al,
*Plaintiffs,*

*v.*

# CITY OF EUGENE et al,
*Defendants.*

## (USDC 88-6164-E; SC S36101)

787 P2d 881

Malcolm F. Marsh, United States District Judge.

Robert D. Durham, of Durham, Drummonds, Smith & Wiser, Portland, argued the cause and filed the briefs for plaintiffs.

William F. Gary, of Harrang, Long, Watkinson, Arnold & Laird, P.C., Eugene, argued the cause for defendants. With him on the brief were Jens Schmidt and Milo R. Mecham, Eugene.

John Paul Graff, of Graff & O'Neil, Portland, filed a brief on behalf of *amicus curiae* American Civil Liberties Union of Oregon, Inc.

David A. Ernst, of Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, filed a brief on behalf of *amicus curiae* The Association of Oregon Counties. With him on the brief was Douglas R. Andres, Portland.

Before Peterson, Chief Justice, and Carson, Linde,* Jones, Gillette, Van Hoomissen and Fadeley, Justices.

JONES, J.

---

* Linde, J., retired January 31, 1990.

**JONES, J.**

This is a certified question proceeding. ORS 28.200 to ORS 28.255. Plaintiffs, a group of teachers and a news reporter, filed a complaint in the United States District Court for the District of Oregon against the City of Eugene (the City) and officials and police officers employed by the City (the Officials and Officers).

Plaintiffs allege that six teacher-picketers (plaintiffs Hunter, Ogan, Cataldo, Oft Rose, Doering, and Sexton) and the radio news director (plaintiff Roberts), collectively known as "Plaintiff Group I," were attacked by club-wielding city police officers acting within the scope of their employment and driven from their respective locations on or near a strike picket line at Churchill High School on April 27, 1987. These plaintiffs allege that the police officers were acting under directions from their supervisors and "used substantially more force than was necessary to accomplish any legitimate law enforcement objectives." The teacher-picketers allege that the conduct of the police officers interfered with their

"opportunity to engage in picketing, to move freely about, and to communicate by word and by picket sign at the site of an important public controversy and labor dispute."

News director Roberts also alleged that the conduct of the defendants

"substantially interfered with the ability and opportunity of Gordon Roberts to report on the events which he observed and to speak with persons at the scene to gather facts, opinions and other newsworthy information for purposes of news reporting."

These plaintiffs allege that the police assault at Churchill High School

"caused substantial physical injuries, bruises, contusions, swelling, pain, interference with sleep and other personal habits, emotional distress and embarrassment."

In addition, the news director alleged that city officials shunned him, failed and refused to answer his telephone calls, declined to speak with him about the teacher strike and other matters, and substantially interfered with his ability to carry out his employment responsibilities. These plaintiffs claim

substantial general damages and special damages. The plaintiffs in Plaintiff Group I also allege

> "in the alternative that in carrying out the tortious conduct described in this claim for relief, the individual police officers were acting outside the scope of their employment, and in that event, those plaintiffs should recover general and special damages from those officers without the limitation of ORS 30.270, and substantial punitive damages from those officers [because they acted willfully, intentionally and for the purpose of vexing, injuring and annoying those persons]."

The remaining plaintiffs, who are also teachers, allege that they were engaged in protected expressive activity in support of the teacher strike in Eugene, and were arrested by Eugene police officers, and that the arrests interfered with their legitimate free speech rights, liberty, and freedom of movement, and caused substantial general and special damages.

All plaintiffs seek to impose liability for damages on defendants City of Eugene, its administrators and police officers for the assaults on and arrests of plaintiffs, as well as to recover reasonable attorney fees. Plaintiffs alleged seven claims for relief:

1. Violations of First and Fourteenth Amendments;

2. Tort action under Article I, section 8, of the Oregon Constitution;

3. Assault and battery;

4. Intentional infliction of emotional distress;

5. False arrest and imprisonment;

6. Defamation;

7. Negligence.

Defendants moved to dismiss the state constitutional claim on the ground that it fails to state a claim upon which relief can be granted. They contended that Article I, section 8, does not give rise to a private right of action for damages. The District Court granted plaintiffs' motion for certification because it appeared that there is no controlling Oregon precedent, and this court accepted review. The certified questions are:

"(1)   May persons whose rights under Article I, section 8 of the Oregon Constitution were allegedly violated by a municipality and by municipal employees bring an action for damages against the municipality and its employees directly under the Oregon Constitution?

"(2)   If so, are the damages and attorney fees alleged by plaintiffs in this case recoverable in such an action?

"(3)   If the answer to the first question is yes, would the claim be subject to the following defenses:

"(a)   comparative fault;

"(b)   sovereign immunity;

"(c)   qualified immunity of the type available to municipal employees in actions under 42 U.S.C. § 1983;

"(d)   the immunity defenses available under the Oregon Tort Claims Act, ORS 30.265-(2)-(3)?"

■   We begin by examining the first certified question because, if the answer to that question is no, we need not answer the other two certified questions. We hold that plaintiffs may not bring an action for damages against defendants directly under Article I, section 8, of the Oregon Constitution, which provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Violation of a state constitutional right does not presently *per se* result in a civil or criminal sanction. The first certified question thus presents an issue of first impression for this court. On the other hand, the United States Supreme Court has in this generation recognized an implied private right of action for damages for federal constitutional violations, although not without deep and spirited debate on the propriety of, preferred analytic methods for, and limitations upon such actions. *See, e.g., Carlson v. Green,* 446 US 14, 100 S Ct 1468, 64 L Ed 2d 15 (1980).

Of course, the judiciary has no authority without legislation to put a person in jail for violating a constitutional right. By like token, we are very reluctant to impose any civil responsibility in the form of damages for violation of such a right, absent specific legislation or clear legislative intent. *Cf.*

*Bob Godfrey Pontiac v. Roloff,* 291 Or 318, 329, 630 P2d 840 (1981) (the court declined to recognize an implied right of action for damages for a *statutory* violation, relying in part on the statement that "we find nothing in the statute or its legislative history to indicate that the legislature intended that there should be liability for violation of its provisions"). *Compare Nearing v. Weaver,* 295 Or 702, 707, 670 P2d 137 (1983) (the court recognized an implied *statutory* right of action for damages because the police violated "a specific duty imposed by statute for the benefit of individuals previously identified by a judicial order").

Oregon's Bill of Rights provides no textual or historical basis for implying a right to damages for constitutional violations. There is no clear indication as to the state, for example, that the legislature or the people intended to waive sovereign immunity in the Oregon Tort Claims Act, ORS 30.260 *et seq.,* to permit such implied private rights of action, and that waiver can *only* be accomplished by the legislature, not by this court. *See Hale v. Port of Portland,* 308 Or 508, 516-17, 783 P2d 506 (1989). Neither can we impute from the Tort Claims Act any intent on the part of the legislature to create or recognize such a cause of action against the city or its servants.

By way of contrast, the United States Congress has recognized that individuals are entitled to damages and other redress for violation of federal constitutional rights and has done so since the time of the Civil War Amendments when the original version of 42 USC § 1983 was enacted.[1] More recently, Congress provided further significant civil redress by enacting the Civil Rights Act of 1964 and at this writing is considering extending further remedies for civil rights violations under a proposed act of 1990. This state's legislature has not enacted legislation comparable to these federal enactments.

Lacking legislative guidance, this court is in a poor position to say what should or should not be compensation for

---

[1] Following the ratification of the Thirteenth, Fourteenth, and Fifteenth Amendments (in 1865, 1868, and 1870, respectively), Congress enacted the Civil Rights Act of 1866 (*see* 42 USC §§ 1981, 1982; 18 USC § 242, for modern versions); the 1870 Enforcement Act (*see, e.g.,* 18 USC § 241, for modern provisions); the Civil Rights Act of 1871 (*see, e.g.,* 42 USC §§ 1983, 1985, for modern provisions); and the Civil Rights Act of 1875 (held unconstitutional in the 1883 Civil Rights Cases).

violation of a state constitutional right and what limitations on liability should be imposed, and to address a plethora of other problems that have been addressed and at least partially answered by federal legislation. State constitutional history and the subsequent jurisprudential history of no implied causes of action for damages for constitutional violations plainly leave us without any guidance.

■ If an implied private right of action for damages for governmental violations of Article I, section 8, and other non-self-executing state constitutional provisions is to exist, it is appropriate that it come from the legislature, not by action of this court.

We therefore hold that persons whose rights under Article I, section 8, of the Oregon Constitution are violated by a municipality or its employees may not bring an action for damages against the municipality or its employees directly under the constitution, but will be limited to existing common-law, equitable, and statutory remedies.

Certified questions answered.