868 P.2d 673

**Sandra ACOSTA, Personal Representative of the Estate of Zacqueo Martinez–Acosta, Deceased, Plaintiff–Appellee,**

**Jaime Acosta, Plaintiff–In–Intervention–Appellant,**

v.

**CASTLE CONSTRUCTION, INC., R.T. Contractors, Inc., Four Seasons Heating and Cooling, Sierra Construction, Inc., and Loretto Partners, Defendants–Appellees.**

No. 13245.

Court of Appeals of New Mexico.

Jan. 5, 1994.

Jake Evans, Las Cruces, for plaintiff-appellee.

Mario A. Esparza, Las Cruces, for plaintiff-in-intervention-appellant.

Larry Ramirez, Weinbrenner, Richards, Paulowsky & Sandenaw, Las Cruces, for defendant-appellee Castle Const., Inc.

Kenneth H. Martinez, Beall, Biehler & Bannerman, P.A., Albuquerque, for defendant-appellee R.T. Contractors, Inc.

LeRoi Farlow and Suzanne R. Spiers, the Farlow Law Firm, P.A., Albuquerque, for defendant-appellee Four Seasons Heating and Cooling.

Lawrence R. White, Miller, Stratvert, Torgerson & Schlenker, P.A., Las Cruces, for defendants-appellees Sierra Const., Inc. and Loretto Partners, Inc.

*OPINION*

ALARID, Judge.

Plaintiff-In-Intervention Jaime Acosta (Acosta) appeals the trial court's grant of summary judgment in favor of Defendants. The sole issue raised on appeal is whether the trial court erred in granting Defendants' motion for summary judgment because Acosta did not establish the element of "contemporary sensory perception of the accident" which is necessary for a claim of negligent infliction of emotional distress. We answer

in the affirmative and reverse the grant of summary judgment.

### Standard of Review

 Summary judgment is a drastic remedy which should only be used with great caution. *Cunningham v. Gross*, 102 N.M. 723, 699 P.2d 1075 (1985). In reviewing an appeal from an order granting summary judgment, this Court examines the whole record for evidence that places a material fact at issue. *Dunn v. State ex rel. Tax & Rev. Dept.*, 116 N.M. 1, 859 P.2d 469 (Ct.App. 1993). We also view the matters presented in the light most favorable to support a trial on the merits. *Id.*

## FACTS

On April 16, 1988, Acosta was the general project foreman for the renovation of the Loretto Towne Mall, owned by Defendant Loretto Partners. One of the subcontractors on the job, Sid's Plumbing and Heating, Inc., employed Acosta's younger brother, Zacqueo Martinez–Acosta.

On the afternoon of April 16, 1988, Acosta was at his business, which is also located in the Loretto Towne Mall, when he heard a series of screams. Upon hearing the screams, Acosta immediately began to run toward the direction from where he heard the screams. As he ran to the accident scene, a construction worker shouted at Acosta that a worker had been seriously injured. The physical distance between Acosta's office and the accident scene was 322 linear feet. It took Acosta no more than eighteen seconds to arrive at the accident scene after he heard the initial scream.

As Acosta arrived at the Southwest Title Company's office space, he saw Johnny Flores administering cardiopulmonary resuscitation to a body lying on the floor. As Acosta approached, he realized the body was that of his younger brother, Zacqueo Martinez–Acosta. According to Acosta, his brother's mouth and nostrils were still smoking as a result of his brother's electrocution. Acosta did not see the actual electrocution of his brother, but did hear the screams and see the results eighteen seconds later.

Acosta immediately took over for Flores and administered cardiopulmonary resuscitation to keep his brother alive until the ambulance arrived. Acosta's C.P.R. efforts were successful, as his brother was still breathing and had a pulse up until the time the emergency medical technicians arrived on the scene.

Acosta accompanied his brother to Memorial Medical Center and continued his C.P.R. efforts while en route to his hospital. Zacqueo Martinez–Acosta died while being transported by ambulance to Memorial Medical Center in Las Cruces, New Mexico.

Although the parties view the facts of the case from different perspectives, there is agreement concerning the facts essential to our understanding of the case. We recognize that there are slight differences in the facts as recited by the parties, but we do not view those differences as having a significant impact on our resolution of the legal dispute presented in this appeal. We view the issue presented here as one of law and make no prediction as to whether Plaintiff can satisfy the trier of fact once the correct legal standard is applied.

## DISCUSSION

 It is clear that all parties recognize *Folz v. State*, 110 N.M. 457, 797 P.2d 246 (1990), as the case which establishes the elements that must be proven for Acosta to succeed in his claim of negligent infliction of emotional distress. Under *Folz* three elements must be alleged and proven by Acosta to establish a prima facie case. *Id.* at 471, 797 P.2d at 260.

> [T]o establish the genuineness of a claim for negligent infliction of emotional distress, it is sufficient to allege and prove that (1) the plaintiff and the victim enjoyed a marital or intimate family relationship, (2) the plaintiff suffered severe shock from the contemporaneous sensory perception of the accident, and (3) the accident caused physical injury or death to the victim.

*Id. See also* SCRA 1986, 13–1629 (Repl. 1991). In the case before us the only element at issue is whether Acosta experienced a contemporary sensory perception of his brother's death.

30

In this case, Defendants seem to argue that unless the plaintiff is actually present and sees the event in question, there is no contemporary sensory perception. Defendants' position in our view, goes beyond the holding of our Supreme Court in *Folz* and adds elements to the cause of action which the Court could have but did not bring within its holding. If the Court wanted to require presence and sight as elements, it could have easily done so, but it did not. Instead, the Court chose a phrase that has a broader meaning than Defendants urge upon us.

Although no New Mexico appellate court authority directly addresses the narrow question of what specifically is required for establishing "contemporaneous sensory perception," the cases in which this phrase appear do not suggest that the meaning of the phrase is limited solely to visual observance. *See Solon v. WEK Drilling Co.*, 113 N.M. 566, 570, 829 P.2d 645, 649 (1992); *Folz*, 110 N.M. at 468–71, 797 P.2d at 257–60; *Ramirez v. Armstrong*, 100 N.M. 538, 541–42, 673 P.2d 822, 825–26 (1983); *Zamora v. Creamland Dairies, Inc.*, 106 N.M. 628, 636, 747 P.2d 923, 931 (Ct.App.1987); *Dawson v. Wilheit*, 105 N.M. 734, 736, 737 P.2d 93, 95 (Ct.App. 1987). In *Solon* and *Ramirez* the Supreme Court noted that the requirement of "contemporary sensory perception" is not satisfied by learning of an accident by "other means" or "after its occurrence." *Solon*, 113 N.M. at 570, 829 P.2d at 649; *see also Ramirez*, 100 N.M. at 541–42d, 673 P.2d at 825–26.

Other jurisdictions have considered, in a variety of factual situations, what is meant by "contemporary sensory perception." *See Neff v. Lasso*, 382 Pa.Super. 487, 555 A.2d 1304, 1306 (1989); *General Motors Corp. v. Grizzle*, 642 S.W.2d 837, 844 (Tex.Ct.App. 1982); *Bedgood v. Madalin*, 589 S.W.2d 797, 802–03 (Tex.Civ.App.1979), *aff'd in part and rev'd in part on other grounds*, 600 S.W.2d 773 (Tex.1980); *Gates v. Richardson*, 719 P.2d 193, 199 (Wyo.1986). *See generally* Annotation, *Immediacy of Observation of Injury as Affecting Right to Recover Damages for Shock or Mental Anguish from Witnessing Injury to Another*, 5 A.L.R.4th 833 (1981); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts*, § 54 (5th ed. 1984 & Supp.1988).

■ In considering whether there has been a "contemporaneous sensory perception," we conclude that visual observance of the accident is merely one of the ways in which the required "sensory perception" may occur. *See, e.g., Neff*, 555 A.2d at 1311–13. *See also Corsco v. Merrill*, 119 N.H. 647, 406 A.2d 300 (1979); *Nazaroff v. Super. Ct. In and For Cty. of Santa Cruz*, 80 Cal.App.3d 553, 145 Cal.Rptr. 657, 664 (1978); *Archibald v. Braverman*, 275 Cal.App.2d 253, 79 Cal. Rptr. 723, 724–25 (1969); *DuPont v. Norton's Plumbing*, 2 CSCR 570 (Conn.Super.1987). We do not believe that the "sensory and contemporaneous observance" requirement should be strictly limited to a visual observance of the accident. *See* SCRA 13–1629 (Uniform Jury Instruction, Civil, requiring proof that party "seeing or perceiving the occurence suffered severe emotional distress[.]"). Instead, we think even though a party may not actually see the accident, he or she may perceive the event by other than visual means. SCRA 13–1629. *But see Frediani v. Haines*, 210 Cal.App.3d 1036, 242 Cal.Rptr. 856 (1988).

In sum, we conclude that the facts as alleged by Acosta were sufficient to give rise to a material disputed factual issue as to whether he satisfied the "contemporaneous sensory perception" requirement. *See Trujillo v. Treat*, 107 N.M. 58, 61, 752 P.2d 250, 253 (Ct.App.1988) (genuine issue of material fact precludes grant of summary judgment).

CONCLUSION

In this case, Acosta has made a prima facie case and, by applying the incorrect legal standard, the trial court erroneously granted Defendants' motion for summary judgment. The grant of summary judgment is set aside and the case remanded to the trial court with instructions to reinstate Acosta's claim.

IT IS SO ORDERED.

DONNELLY and BLACK, JJ., concur.